UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Jeffrey Rahim Colberth, ) | C/A No. 4:09-3213-JFA-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| ) | |
| ) | |
| Bob Olson, Food Service; Mr. McCall, Warden; Steven J. ) | |
| Reck, Food Service Branch Chief; Mr. Kirsch, Food ) | |
| Service Branch; Mr. Claytor, Acc. Warden; Ms. ) | |
| Cocciolone, IGC; Ofc. D. Lindsey; Ofc. Sowell; Mr. ) | |
| Najjar, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Jeffrey Colberth, filed this action on December 15, 2009, alleging various claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. The plaintiff is an inmate currently housed at the McCormick Correctional Institution ("MCI"). At the time of the allegations raised in the complaint, plaintiff was incarcerated at Perry Correctional Institution (PCI). Before the undersigned is the defendants' motion to dismiss, or in the alternative, motion for summary judgment and plaintiff's motion for summary judgment. (Doc. #35 and #52.)[1]

Defendants filed a motion for summary judgment on August 5, 2010, along with a memorandum and exhibits in support of said motion. (Doc. #52). Because plaintiff is proceeding pro

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

1

se, he was advised on or about August 6, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the procedure for summary judgment and the possible consequences if he failed to respond adequately.

Plaintiff filed a motion for summary judgment (doc. # 35) on May 7, 2010, and defendants filed a response in opposition on May 27, 2010. (Doc. #41). Plaintiff also filed a motion for a temporary restraining order on April 29, 2010 (doc. #29) and defendants filed a response in opposition. (Doc. #39).

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

As previously stated, defendants filed a motion to dismiss, or in the alternative for summary judgment. As matters outside of the pleadings were submitted by the parties, the undersigned will address this motion under Rule 56 of the Federal Rules of Civil Procedure.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer

Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### B. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges violations with regard to the conditions of confinement while housed at PCI. Specifically, plaintiff alleges that he was served cold food, food with objects in it, and uncooked meat. He also alleges he was denied access to news media/current events, that his grievances have not been processed, that officers make sexual remarks to the inmates and call him and other inmates names. Lastly, plaintiff alleges the water was turned off in his cell for seven hours on one occasion. (Complaint). Specifically, plaintiff alleges as follows, quoted verbatim:

> On September 1, 2009, DHEC was address(ed) due to the continuing of serious food violations by Food Service Bob Olsen at Perry Correctional Inst. were their(s) an on going issue of service of food in unclean tray(s), or the food being served extremely cold, un-cooked meat, (sometime(s) raw) steel ball(s) which can be found within the service of bean(s) along with rock(s) and other object(s) within the food. Mr. Steven J. Reck and Mr. Kirsch was addressed and they came to Perry Correct. Insti. to investigate the service of the food and stated that everything would change. However, nothing has changed with the food condition here at Perry. Mr. Claytor, PCC Warden over program services was properly addressed about such complaint(s) but he never addressed the continuance of the serious health violation(s) in which he let continue to go on. Mr. McCall whom is the Warden here at Perry was then addressed about said concern(s) but he would never respond to the issue(s) that was b[r]ought to his full attention; yet continue to allow the situation to go unattended. [M]any complaint(s) were filed by way of Grievance but the IGC here at Perry Correct. Insti. Ms. Cocciolone would not process said grievances in which she is directly hindering each said complaint to advance to the next level of complaint. Ofc. D. Lindsey and Ofc. Sowell whom make sexual advances and lewd remarks toward(s) my person(s) and other inmate(s) whom are housed with me. They make remark(s) such as "pop, lock, and drop um" which is being referred as meaning turn around and remove your clothing and spread your buttock(s) so that they can have a visual look at the inside of your crack an anus. On 10/13/09 Ofc. Sowell then refurr(s) to me, as well as the other inmate(s) housed along with me as puck(s), girl(s), nigger(s)m, and stupid nigger(s), all to which was witnessed by his co-worker whom is an African American male. When the statement was made said ofc. on duty

>wrote Ofc. Sewell up and Major D. Bush then acted on the said matter. . . .Bob Olson whom is over Food Service here at Perry Correct. Inst. always serve cold food to which I am begin[in]g to have trouble with my stomach due to the unproper food supervision here on SMU-1 at Perry Correct Inst. Acc Warden Claytor has also turned my cell water off by informing Ofc. D. Lindsey to do so, to which my cell water was turned off for 7 hour(s). Acc. Warden Claytor, Warden McCall, and Mr. Najjar all to whom refuse(s) those of us on ASU and on the General Population area the use and or access to the goings and comings of media event(s) that are taking place in society. All this is being inflicted upon us here at Perry correctional inst.[2]

(Complaint).

Plaintiff seeks attorney fees and "3.5 Million Dollar(s) and that a Restraining order be issued between myself and all the defendant(s) involved. . . " (Complaint).

Defendants filed their motion for summary judgment asserting the case should be dismissed in that plaintiff has failed to show that the conditions of his confinement constitutes cruel and unusual punishment, failed to show that he has been denied meaningful access to court, inmates are not entitled to a grievance process, and defendants are entitled to qualified immunity.

Plaintiff filed a response in opposition and attached an affidavit from inmate Marcus Frierson and copies of Requests to Staff/grievances by inmate Frierson.

## C. ANALYSIS

FOOD SERVICE/ WATER BEING TURNED OFF

Defendants submitted the affidavit of Bob Olson who attests that he is the Food Service Director at PCI. (Olson affidavit, doc. #52-8). The same food is served to inmates in SMU at PCI

---

[2] As to plaintiff's allegations of other inmates, plaintiff does not have standing to bring this claim. To state a civil rights claim, one must allege that he, himself, sustained deprivation of right privilege, or immunity secured by the Constitution or federal law. <u>Inmates v. Owens</u>, 561 F.2d 560, 562-562 (4th Cir. 1977).

as served to the general population. (Id.). Food warmers are used to assure that food served to SMU inmates is at the proper temperature. (Id.). The menu meets all of the basic nutritional requirements and is approved by the SCDC headquarters. (Id.). The food service operation at PCI undergoes an annual inspection by DHEC, the inspection is not announced, and the last inspection was December 21, 2009. (Id.). The food service operation at PCI received a grade of "A."(Id.). Olson attached a copy of the Inspection Report to his affidavit. (Id.). The food service operation was also inspected on September 11, 2009, in response to inmate complaints and received a score of 96 points out of a possible 100 and was given a grade of "A."(Id.). The operation at PCI has not received any complaints from the general population concerning uncooked meat and the same food is served to the general population as to the inmates in SMU. (Id.). The food is transported in food warmers. Olson attests that he did note that they were using a recipe which called for ketchup to be placed on top of meatloaf which did give the meat a pink appearance and have since taken it out of the recipe. (Id.). Olson regularly supervises the food service operation along with other persons from his department. (Id.). Olson attests that the inmates at PCI are not served uncooked meat. (Id.). The trays used to serve the food are regularly placed through a dishwasher, and they are not greasy, dirty, or unsanitary. (Id.). Olson attests that they receive dry beans in bags and attempt to remove any rock or objects prior to cooking the beans. (Id.). As DHEC recently did away with the requirement that serving gloves and hairnets or hats be worn by persons handling food, the food service workers no longer wear gloves, hats or hairnets based upon this change in requirements by DHEC. (Id.).

  Plaintiff also alleges that defendant Claytor had the water turned off to his cell for seven hours. Defendants argue this claim should be dismissed because plaintiff does not give a date or

reason for the water being turned off, and the claims do not rise to the level of a constitutional violation.

Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. Conditions must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). In addition, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Court of Appeals for the Fourth Circuit considered the case of Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993). The Court in Strickler said that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant physical or mental harm. While any of these conditions standing alone may not constitute cruel and unusual punishment, they may constitute an Eighth Amendment violation if considered in aggregate, McElveen v. County of Prince William, 725 F.2d 954 (4th Cir.), cert. denied, 469 U.S. 819 (1984). However, to be considered in aggregate, conditions must have mutually enforcing effects that produce a deprivation of a single, identifiable need such as food, warmth, or exercise. Wilson v. Seiter, 501 U.S. 294 (1991). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Plaintiff has failed to prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendant. Strickler, supra. The food service at PCI has been inspected on an annual basis and at other times and graded "A." Occasional, short-lived problems with prison food service and isolated instances

7

of inmates missing a meal or two do not implicate the Eighth Amendment. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir.1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."). As to plaintiff's assertion that the water was turned off one time for seven hours, plaintiff does not claim any injury or that he was deprived a basic need. Defendants presented an affidavit from Associate Warden Claytor that if an inmate throws liquids from his cell, floods his cell, or if there are repairs to the water system, the water may be shut off for a short period of time. Assuming, *arguendo*, improper reasons for turning water off in a cell, plaintiff's claim still fails because he has not shown the type of extreme deprivation the Constitution prohibits. The temporary deprivation of relatively short duration at issue here does not rise to the level of a constitutional violation. Therefore, defendants are entitled to summary judgment.

Neither allegation rises to the level of a constitutional violation. Thus, plaintiff has failed to meet his burden and defendants are entitled to summary judgment with respect to these issues.

ACCESS TO MEDIA/NEWS

As previously stated, plaintiff asserts his rights have been violated because their "access to the going(s) and comming(s) of media event(s) are taking place in society, all this is being inflicted upon us here at Perry Correctional Insti." (Complaint). Plaintiff appears to allege that his rights are violated because his access to media events are restricted.

Defendants argue there is no right of direct access to the media by inmates. Defendants submitted the affidavit of Warden McCall, Warden at PCI, who attests that a security issue arose in the SMU at PCI in 2009 when inmates were using batteries and radios to construct handcuff keys.

(Id.). As a result, McCall restricted the possession of radios and batteries for inmates housed in SMU. (Id.). Another security issue arose in SMU at PCI when inmates were using magazines and newspapers to cover the openings of their cell and their cell lights. (Id.). As a result, McCall restricted magazines and newspapers from the SMU. (Id.). However, to allow inmates to keep up with current events, McCall set up a newsletter to be prepared and issued through the Chaplain's office. (Id.). McCall attests that his actions were not punitive but were directly related to security concerns caused by the activities of the SMU inmates. (Id.).

Defendants also submitted the affidavit of Michael Najjar who attests that he is employed with the SCDC and assigned to PCI. (Najjar's affidavit, Doc. #52-5). At the time alleged in plaintiff's complaint, he was an Administrative Specialist and Education Coordinator. (Id.). Due to security issues raised by inmates making handcuff keys from batteries and radios, the Warden restricted radios and batteries from the SMU unit and Najjar carried out the Warden's instructions. (Id.). Another security issue was raised when inmates were using newspapers and magazines to cover their cell openings and cell lights. (Id.). Therefore, the Warden also restricted the possession of magazines and newspapers in SMU and he carried out the Warden's instructions. (Id.). Najjar attests that he never advised SMU inmates or any other inmates that they would not have access to court and did not restrict them from access to the courts. (Id.).

Defendants submitted the affidavit of Miriam Snyder, formerly known as Ms. Cocciolone, who attests that she is employed by SCDC as the Inmate Grievance Coordinator (IGC) at PCI. (Snyder's affidavit, doc. #52-7). On March 16, 2009, radios and batteries were prohibited by Warden McCall from SMU due to inmates taking them apart and making handcuff keys. (Id.). Warden McCall also stopped newspapers and magazines from being sent to SMU due to the inmates using

them to cover cell openings and cell lights. (Id.). The Warden set up a newsletter to be published to SMU inmates to provide news information to them. (Id.). As IGC, Snyder attests that she processes the complaints and grievances according to SCDC Policy and it if is not properly prepared or signed, it is returned to the inmates. (Id.). Snyder asserts that she has never deliberately failed to process a grievance or attempted to delay a grievance of an inmates. (Id.).

Regulations affecting incoming mail are valid if they are reasonably related to a legitimate penological interest. See Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987). In Turner, the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. Id. at 89. The Court also recognized that substantial deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. Id. In Turner, the Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. Id. at 89-90. In Beard v. Banks, 126 S.Ct. 2572 (2006), the Supreme Court concluded that a prison policy prohibiting inmates' access to newspapers, magazines, and photographs did not violate the First Amendment. The Court determined the reasons for the policy, which was to provide an incentive to promote better inmate behavior, satisfied the Turner standard.

Based on the defendants' affidavits, newspapers, magazines, and radios are restricted in the SMU due to inmates utilizing these to make handcuff keys and to cover their lights and cell

openings. Although, defendant Warden McCall attests that a newsletter is prepared and issued as an alternative means for inmates to keep up with current events, plaintiff has submitted evidence to the contrary. As previously discussed, Plaintiff submitted an affidavit from inmate Marcus Frierson along with a copy of Frierson's Request to Staff Members dated November 23, 2009, in which Frierson stated "I understand that the Warden McCall has taken all magazines, radios, newspapers for security reasons. I'm requesting a[n] alternative source of local news and current events a weekly lockup newsletter." (Doc.#35-3). The response dated November 24, 2009, was "only 1 book, 1 Bible/Quran; no newspaper in SMU, magazines & radios have been removed." (Id.). Plaintiff submitted another copy Frierson's second Request to Staff Member dated November 25, 2009, in which he requests an alternative source of local news stating, "Can I get a weekly newsletter in place of such books being security threats." (Doc. #35-3). The response from staff was "only 1 book/1Bible Quran; no newspapers in SMU; magazines and radios been removed No Newsletters! Per warden." Id. Defendants have offered no explanation or otherwise challenged plaintiff's allegations that he was denied the newsletters. The absence of any alternative can provide "some evidence that the regulations [a]re unreasonable," but is not "conclusive" of the reasonableness of the Policy. Beard, 548 U.S. at 531, *quoting* Overton v. Bazzetta, 539 U.S. 126, 135 (2003). Therefore, the policy set forth by defendant Warden McCall that SMU inmates are not allowed books, magazines, newspapers or radios due to security concerns may be constitutional and may be related to a penelogical interest. The policy as set forth in the affidavits appears to restrict only the form and means of access to current events due to security concerns, but not all the information itself. Based on that evidence, the restriction may be valid as reasonably related to a legitimate penological interest advanced and in compliance with the Turner test. However, as set out above,

the plaintiff disputes that he received a newsletter and provides evidence to corroborate his allegation that inmates in SMU are/were being denied the newsletter. Whether only inmate Frierson was denied the newsletter or a sufficient legitimate interest exists for restricting plaintiff from receiving the newsletter cannot be determined from the evidence before the court, and the court will not speculate as to the reason. Therefore, an issue of fact exists and it is recommended that defendants' motion for summary judgment with regard to access to media/news be denied as to Warden McCall. It is recommended summary judgment be granted as to the other defendants as plaintiff has failed to show that there is any personal involvement as to any other defendant with regard to this issue.

ACCESS TO COURT

Any claim with regard to access to court, fails. Plaintiff has not shown any actual injury. Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts.  (Pink v. Lester, 52 F.3d 73 (4th Cir. 1995), "negligent denial of access to the courts is not actionable under § 1983.") A prisoner must allege adverse consequence as a basis for allegations that the delay or non delivery deprived him of meaningful access to the courts.  White v. White, 886 F.2d 721 (4th Cir. 1989) and Morgan v. Montanye, 516 F.2d 1367 (2d Cir. 1975 ) cert. denied, 424 U.S. 973 (1976). Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Lewis v. Casey, 518 U.S.343 (1996). Plaintiff has failed to meet this burden. Therefore, it is recommended that summary judgment be granted to all defendants in relation to this issue.

GRIEVANCES

Plaintiff has made allegations regarding the grievance procedure at PCI. Plaintiff appears to allege that his grievances were not handled properly. Defendants argue that this issue should be denied. It is recommended that these allegations be dismissed as there is no constitutional right to participate in grievance proceedings. <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994).

STRIP SEARCHES

Plaintiff alleges that his rights are violated because he is subjected to strip searches when leaving his cell in SMU and has been told to "Pop, lock and drop-em." (Complaint).

Defendants submitted the affidavit of Officer Derrick Lindsay ("Lindsay") who attests that he is a correctional officer with SCDC and assigned to the SMU unit at PCI. (Lindsay affidavit, doc. #52-3). Inmates in the SMU unit are required to submit to a body cavity search but that he has never told an inmate to "Pop, Lock them and drop them" nor heard any other officer use that phrase. (<u>Id</u>.). Lindsay attests that he does not degrade, insult or call inmates names. (<u>Id</u>.).

Defendants also submitted the affidavit of Officer M. Sewell ("Sewell") who attests that he is a correctional officer with SCDC assigned to the SMU unit at PCI. (Sewell affidavit, doc. #52-6). Part of Sewell's duties are to perform strip searches on inmates in the SMU which requires inmates to bend at the waist and spread their cheeks and cough for the purpose of a search for weapons and contraband. (<u>Id</u>.). The inmates' cells and clothing are also searched for weapons and contraband. (<u>Id</u>.). The purpose of the searches is for the safety of the officers and inmates. Sewell attests that at no time has he used the phrase "Pop, lock them and drop them" nor has he heard any other officer

use that phrase. (Id.). Sewell asserts that he does his job to maintain safety and security and does not degrade inmates, make sexual remarks, or use racial slurs in performing his duties. (Id.).

Plaintiff is in the SMU where inmates are subject to strip searches for weapons and contraband as a security measure. "[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminals pay for their offenses against society." Id. at 338. Inmates do not enjoy a right to be free from all indignities. Routine strip searches of segregated inmates based upon security concerns have been upheld by numerous courts. See, e.g., Rickman v. Avanti, 854 F.2d 327, 328 (9th Cir.1988) (prison policy requiring prisoners in segregation unit to submit to strip searches when leaving their cells for recreation, medical treatment, visitation, and use of law library was found constitutional); Goff v. Nix, 803 F.2d 358, 370-71 (8th Cir.1986), *cert. denied*, 484 U.S. 835, 108 S.Ct. 115, 98 L.Ed.2d 73 (1987) (visual body cavity search of segregation unit inmates before and after going to exercise area to prevent passage of contraband constitutional); Campbell v. Miller ,787 F.2d 217, 228 (7th Cir.1986), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986) (permitting visual body cavity searches of high security inmates being transported to law library). Accordingly, it is recommended that defendants' motion for summary judgment be granted with respect to this issue.[3]

---

[3] Any claim with regard to comments made by officers fails. Verbal abuse of inmates by guards, without more, states no claim of assault. Morrison v. Martin, 755 F.Supp. 683, 687 (E.D.N.C.), *aff'd*, 917 F.2d 1302 (4th Cir. 1990); McCoy v. Bazzle, No. 08-2930, 2009 WL 3169963, at * 4 (D.S.C. Sept. 28, 2009) [Prison captain allegedly touching inmate on his buttock when he was going back to his cell, absent any showing of physical injury, failed to establish facts sufficient to support a claim for violation of the Eighth Amendment]; Calhoun v. Vicari, 05-4167, 2005 WL 2372870, at * 5 (D.N.J. Sept.26, 2005) [Holding that sexual gestures, jokes, and slap on the buttock

## D. QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity. Although the burden of showing immunity remains on the defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

---

not sufficiently serious to satisfy the objective component of an Eighth Amendment claim];

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that defendants Olson, Reck, Kirsch, Claytor, Cocciolone, Lindsey, Sewell and Najjar violated any of his clearly established constitutional or statutory rights. Therefore, all defendants except Warden McCall are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that summary judgment be granted as to defendants Olson, Reck, Kirsch, Claytor, Cocciolone, Lindsey, Sewell, and Najjar.

### E. TEMPORARY RESTRAINING ORDER

Plaintiff filed a motion for a temporary restraining order concerning the Perry Correctional Institution refusing to allow him to make copies and to return his property. Since plaintiff is no longer incarcerated at the Perry Correctional Institution, to the extent he has requested declaratory

and/or injunctive relief, his claims are moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991)["[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."]; Taylors v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir.1986) [holding that prisoner's transfer mooted a request for declaratory and injunctive relief]. Therefore, it is recommended that this motion (Doc. # 29) be deemed Moot.

### III.  CONCLUSION

Based on the above reasoning, it is RECOMMENDED that defendants' motion for summary judgment (document #52) be GRANTED IN PART AND DENIED IN PART. It is granted as to all defendants except as to defendant McCall in relation to one issue as set out above, access to the media/ news on current events.

It is FURTHER RECOMMENDED that plaintiff's motions for summary judgment (doc. #35) and TRO (Doc. #29) be DENIED.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
January, 25, 2011                        United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**